UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE STEPHEN JOHN WILLIAMS      : CASE NO. 3:05-GP-18(RNC)

RULING AND ORDER

This grievance proceeding presents the question whether reciprocal discipline should be imposed on respondent Stephen John Williams, a member of the bar of this Court, based on a suspension order of the Connecticut Superior Court, which has become final.

Local Rule 83.2(f)(2) provides that on a presentment of the Grievance Committee petitioning the Court to impose reciprocal discipline, the identical discipline must be imposed unless it clearly appears on the face of the record in the prior disciplinary proceeding:

a. that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
b. that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistent with its duty, accept as final the discipline imposed; or
c. that the imposition of the same discipline by the Court would result in grave injustice; or
d. that the misconduct established is deemed by the Court to warrant substantially different discipline.

D. Conn. L. Civ. R. 83.2(f)(2).  If the Court finds that one or more of these exceptions exists, it may enter "such other order

as it deems appropriate." *Id.*[1]  Respondent submits that the prior proceeding violated his right to due process, there is an infirmity of proof establishing the misconduct found by the state court, and no discipline should be imposed.  Counsel for the Grievance Committee disagrees and urges that reciprocal discipline is clearly appropriate.

The standard of review in this proceeding is highly deferential to the state court's determination.  *See, e.g.*, *Theard v. United States*, 354 U.S. 278, 282 (1957); *In re Roman*, 601 F.3d 189, 192-94 (2d Cir. 2010); *In re Edelstein*, 214 F.3d 127, 132 (2d Cir. 2000).  Respondent bears the burden of demonstrating by clear and convincing evidence that reciprocal discipline should not be imposed.  *In re Roman,* 601 F.3d at 194 (*citing In re Friedman*, 51 F.3d 20, 22 (2d Cir. 1995)(applying burden of proof on appeal from imposition of reciprocal discipline).  Rarely is this burden met or even attempted to be met.  In most instances, the respondent simply accepts reciprocal discipline.  When the presentment is contested, as it has been here, the Court is not to act as a rubber stamp in the name of

---

[1]  Local Rule 83.2(f) is identical to ABA Model Federal Rule of Disciplinary Enforcement, R.II (D)(1991).  The rule reflects the standard set forth in *Selling v. Radford*, 243 U.S. 46 (1917), which bars reciprocal discipline when the court finds an absence of due process in the prior disciplinary proceeding, substantial infirmity in the proof of a violation, or some other grave reason sufficient to indicate that reciprocal discipline is inconsistent with principles of justice.  *See In re Tidwell*, 295 F.3d 331, 333-34 (2d Cir. 2002).

reciprocity.  Instead it must determine whether the record of the prior proceeding discloses a substantial defect covered by one of the exceptions to reciprocal discipline.  Such a defect would exist if the prior proceeding was fundamentally unfair due to a lack of adequate notice or opportunity to be heard or if the state court's determination was unsupported by evidence.  Having reviewed the record of the prior proceeding with care in light of respondent's many arguments, the Court finds that although some of respondent's arguments have merit, he has not sustained his heavy burden of showing that reciprocal discipline should not be imposed.

## I.  Prior Disciplinary Proceeding

On July 18, 2005, the Connecticut Superior Court entered an order suspending respondent from the practice of law for a period of six months, commencing August 7, 2005, with reinstatement contingent on successful completion of "a Connecticut Bar Association approved course of instruction on legal ethics and Connecticut practice and procedure."  *See State v. Williams*, No. MI04-6287590 (Conn. Super. July 18, 2005).  The Court found that respondent had violated Connecticut Rules of Professional Conduct 1.1, requiring a lawyer to provide competent representation to a client; 3.5(3), prohibiting a lawyer from engaging in conduct intended to disrupt a tribunal; 4.4, prohibiting a lawyer from using means that have no purpose other than to embarrass, delay

3

or burden a third person; and 8.4(4), prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice.[2]

The disciplinary order arose in the following context.  On March 30, 2004, respondent was stopped in Windham, Connecticut and given a ticket for speeding, which carried a fine of $148. At the time of the stop, respondent provided a street address in Hong Kong.  Before the answer date, he returned the ticket to the Central Infractions Bureau with a plea of not guilty.  The return address he provided was a post office box in Hong Kong.  The Superior Court in Danielson scheduled a hearing for November 5, 2004 ("the November hearing").  Prior to that time, respondent notified the Central Infractions Bureau that he had closed the post office box in Hong Kong and asked that future correspondence be directed to his street address there.  The Clerk's Office sent

---

[2] Rule 1.1 states: "A lawyer shall provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

Rule 3.5(3) states: "A lawyer shall not . . . engage in conduct intended to disrupt a tribunal."

Rule 4.4 states: "(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.  (b) A lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender."

Rule 8.4(4) states: "It is professional misconduct for a lawyer to . . . Engage in conduct that is prejudicial to the administration of justice."

notice of the hearing to respondent using the post office box. Because the box had been closed, the letter was returned. Respondent was not given notice of the November hearing by any other means.  When he did not appear for the hearing, the Commissioner of the Department of Motor Vehicles was notified by the Clerk and respondent's driving privileges were suspended. Notice of the suspension was sent by the DMV to the same post office box in Hong Kong and thus was not received by respondent. On February 23, 2005, respondent was stopped in Connecticut and given a misdemeanor summons and complaint for operating a motor vehicle under suspension.  By that time, the case arising from the speeding ticket had been closed.

On March 8, 2005, respondent filed several motions in the case involving the speeding ticket: (1) a motion to reopen the case, which stated that respondent had not received notice of the November hearing and thus had not willfully failed to appear; (2) a motion asking the Court to waive the $60 reopening fee based on the Clerk's failure to provide proper notice of the November hearing; and (3) a motion for mandamus requiring the Clerk to produce a letter acknowledging (a) that respondent did not receive proper notice of the hearing and therefore the matter was wrongly referred to the DMV and (b) that the DMV was not provided with the correct postal address by the Clerk and therefore notice

of the suspension was sent to an incorrect address.[3]

At a hearing in the speeding case on March 16, 2005, the Court (Hon. Michael E. Riley) granted respondent's motions to reopen and waive the reopening fee.  Assistant State's Attorney Jennifer Barry asked for a hearing on the motion for mandamus so the State could subpoena the Deputy Chief Clerk to testify.  The Court agreed to conduct an evidentiary hearing on the mandamus motion.

On April 7, 2005, the day before the scheduled hearing on the mandamus motion, respondent served a request for disclosure on the Clerk's Office relating to the motion.  The request asked the Clerk to produce for inspection and copying "all written guidelines, rules, regulations, policies, etc., relevant to this matter and specifically relevant to the handling of incoming correspondence, the sending of notices of hearing, the sending of notices to the Department of Motor Vehicles and the closing out of cases under C.G.S. § 14-140."

That same day, respondent hand-delivered a letter to the Deputy Chief Clerk in Danielson, Gina Mancini Pickett.  The letter was prepared on respondent's professional letterhead.  The

---

[3]  Practice Book § 23-47 provides that "[a]n order in the nature of mandamus may be made in aid of a pending action upon the application of any party, and any person claimed to be charged with a duty of performing the action in question may be summoned before the court by service upon that person of a rule to show cause."

letter stated that a hearing on the mandamus motion was scheduled
for the next day, that Ms. Barry had indicated an intention to
subpoena Ms. Pickett to testify, and that the hearing would
address "why the Clerk's records were not properly updated, why
the notices were not sent to the correct address and why this
error was not caught even when the file was being closed out
under C.G.S. § 14-140."  The letter went on to state, "It appears
that this hearing is intended as an opportunity for you to be
heard and to defend yourself and your office."  The letter
continued:

> I think it is obvious that a mistake was made by the
> Clerk's Office and that the notices were not sent to
> the correct address.  The Court has already waived the
> re-opening fee based on that argument.  I respectfully
> suggest that the hearing scheduled for Friday serves no
> useful purpose and that a more efficient solution would
> be for your office to issue the requested letter
> without an order of mandamus.  If your office agrees to
> do so then I will withdraw my motion.  Otherwise, I
> intend to proceed with the matter.
>
> In preparation for that hearing, please provide me with
> all written guidelines, rules, regulations, policies,
> etc., relevant to this matter and specifically relevant
> to the handling of incoming correspondence, the sending
> of notices of hearing, the sending of notices to the
> [DMV] and the closing out of cases under C.G.S. § 14-
> 140.  I would also appreciate a written statement of
> what happened in this case and why the notice was not
> sent to the correct address as well as the actual
> policies followed in this case. As Clerk, it is your
> responsibility to provide this information to [the]
> public on request.
>
> Finally, I should point out that this motion for
> mandamus bears no relation to the underlying
> prosecution.  The issue before the Court is solely
> whether you should be ordered to issue the requested

letter.  The matter is more in the nature of a separate
adversarial proceeding.  As such, the office of the
prosecution has no role in this matter.  I also believe
it would be an ethical violation for the office of the
prosecutor to represent your interests before the Court
due to the obvious conflict of interest.  Therefore,
you should consider whether you wish to obtain
independent legal counsel.

To allow you more time to comply with my request, I am
asking the Court to postpone Friday's hearing until Friday,
13 May.  If you think you need more time than that please
let me know.

Respondent also hand-delivered a letter to Assistant State's
Attorney Barry stating that she had no role to play at the hearing
on the mandamus motion because the matter was in the nature of an
"adversarial proceeding between the Clerk and [respondent]" and
the motion was "irrelevant to the underlying prosecution of this
case."  In his letter to Ms. Barry, respondent further stated that
it would be "inappropriate" for her to attempt to represent the
Clerk at the hearing due to an "ethical conflict of interest."

Deputy Chief Clerk Pickett brought respondent's letter to the
attention of the Administrative Judge for the Windham Geographic
Area, the Honorable Francis J. Foley, III.  On April 2, 2005,
Judge Foley issued an order to respondent directing him to appear,
at a time previously scheduled for the evidentiary hearing on the
mandamus motion in the speeding case, to show cause why he "should
not be disciplined or suspended by this court until such time as
he completes approved courses in legal ethics and Connecticut
Practice and Procedure."  The order stated:

The basis for this Order to Show Cause is the conduct of this Defendant, Stephen John Williams, Connecticut Juris Number 309679, in representing his own interests in the above captioned matter.  It has come to the Court's attention that, through the Defendant's pleadings filed in this matter, the Defendant may have violated the Rules of Professional Conduct: Practice Book § 1.1, Competence, to wit, a failure to abide by Practice Book rules regarding the proper form of pleadings; Practice Book § 3.5(3), Engag[ing] in conduct intended to disrupt a tribunal; Practice Book § 4.4, Respect for the Rights of Third Persons; and Practice Book § 8.4(4), Engag[ing] in conduct that is prejudicial to the administration of justice.

Respondent moved to quash the order on the ground that the alleged misconduct had not occurred in the presence of Judge Foley as required to permit the court to proceed summarily under Practice Book § 2-45, rather than by filing a written complaint with the statewide bar counsel.[4]  Respondent further argued that the order failed to provide adequate notice of the basis of the misconduct charges.  Respondent stated, "This Court is embarking on a very novel course of action.  Specifically, the court is setting itself up as complainant, prosecutor and judge in a matter which was never before the court.  The motives of the court must be questioned."  Respondent also moved for a postponement of the

---

[4]  Practice Book § 2-45 provides:

If such cause [for discipline] occurs in the actual presence of the court, the order may be summary, and without complaint or hearing; but a record shall be made of such order, reciting the ground thereof.  Without limiting the inherent powers of the court, if attorney misconduct occurs in the actual presence of the court, the statewide grievance committee and the grievance panel shall defer to the court if the court chooses to exercise its jurisdiction.

hearing and a bill of particulars.

On May 13, 2005, respondent appeared before the court for a hearing on the order to show cause.  Judge Foley noted that respondent had moved for a continuance of the hearing to make an educated decision about how to proceed and whether to retain counsel.  Judge Foley recommended that respondent retain counsel and asked him how much time he wanted for that purpose. Respondent replied "June," whereupon Judge Foley continued the hearing until June 10.

On June 10, 2005, the hearing went ahead as scheduled.  Judge Foley marked as court exhibits respondent's letters to Ms. Pickett and Ms. Barry, which the Judge described as "at least partially inflammatory."  The Judge then responded to the motion for a bill of particulars as follows:

> In response to your concerns about how this came to the
> Court's attention and how I happened to get involved in
> this case - which seems to be a matter which you dwell
> on at some length - I got involved in this case because
> the deputy clerk who works for me received an order - a
> letter from you in which you magnanimously give her
> unsolicited legal advice, you advise her to get a
> lawyer, you suggest that the conduct of the state's
> attorney's office may be unethical, and you tell the
> assistant state's attorney not to appear in court
> regarding the matter.
>
> You failed to appropriately bring the clerk to the -
> before the court.  You have demonstrated, in this
> regard, a disrespect for the rights of others as far as
> I am concerned.  You want to know why you're before the
> Court.  You failed to appropriately bring her here.  You
> failed to appropriately obtain discovery pursuant to the
> Practice Book.  You filed a motion for mandamus when
> there is no such thing as a motion for mandamus.

10

If you read Practice Book Section 23-46 and 23-47, you
will find that a mandamus can be brought by writ summons
and complaint or by an order to show cause, neither of
which you filed in this case.

* * * *

You filed a motion to quash in which you state, among
other things, that it behooves the court to be
especially careful and certainly to follow all the
correct procedural rules as laid down in the Practice
Book, yet you yourself have failed to follow the rules
laid down in the Practice Book.

On your motion for bill of particulars, among other
things, it was not served on all of the parties.  You
asked - you question my motives for handling this
matter.  Mr Williams, my motive, insofar as I have one,
is to ensure the efficient operation of this court.  And
in that oversight capacity, I must guard against persons
who threaten the court staff and file voluminous motions
designed in your words to "obfuscate," which motions
also tend to support, in your words, further proof of
incompetence.  Your motion for mandamus is denied.  As I
said, your motion to quash is denied.  I have responded
to your bill or particulars.  I now, sir, would like you
to come up here and be placed under oath because I have
some questions for you.

Respondent stated that he was not prepared to testify, and

indicated that he needed time to prepare to respond to the

information provided in response to his request for a bill of

particulars.  Judge Foley ordered that respondent be placed under

oath.  After answering a series of questions by the Judge

concerning respondent's educational background and admission to

the bar, respondent requested a postponement to obtain counsel.

At respondent's request, the hearing was continued for a month to

enable respondent to get a lawyer.

On July 18, 2005, the hearing resumed.  Respondent appeared

11

without counsel.  He stated that he had been unable to find a lawyer willing to appear in the matter and was still looking.  The Judge stated that he could not continue the matter indefinitely and proceeded with the hearing.  Prior to the hearing, respondent had applied to have the Clerk issue subpoenas for Judge Foley, Assistant State's Attorney Barry and Deputy Chief Clerk Pickett, requiring them to appear.  He had also filed a motion to suppress his letters to Deputy Chief Clerk Pickett and Assistant State's Attorney Barry.  Dealing with the application for the subpoenas, Judge Foley stated that he would not permit respondent to call the Judge as a witness but indicated that respondent could put the others under oath if he wished then asked respondent to make an offer of proof.  Respondent stated that it was the Judge's obligation to "bring the evidence first."  The application for the subpoenas was then denied.  Turning to the motion to suppress, the Judge gave respondent an opportunity to argue, which respondent declined.  The motion to suppress was then denied, the Court noting that the letters had already been admitted as exhibits.

The motions having been disposed of, the following colloquy ensued:

THE COURT:  Mr. Williams, do you have any comprehension that through all these letters and pleadings that you have filed, you have created a situation for yourself that is wholly disproportionate to the underlying speeding ticket?  Do you

appreciate the significance of that at all?

Mr. WILLIAMS:  Obviously, Your Honor, yes.

THE COURT:  Excuse me?

MR. WILLIAMS:  Yes, Your Honor, I appreciate that the - the situation, that the disciplinary proceeding is wholly more serious than a speeding ticket.  Yes, Your Honor.

THE COURT:  Do you understand that through your voluminous pleadings, which almost every one of which is in some way either inappropriate or not in accordance with the Practice Book -

MR. WILLIAMS:  Well, that's what the issue is about here today, whether that is true or not, Your Honor.

THE COURT:  And I will state again that my concern, Mr. Williams, is that you have complicated this matter out of all proportion and I am fearful that because you have a license to practice, that you might inflict this or beset some unwitting client with all these burdensome pleadings, unnecessary practice, and just consuming the court's time with absolutely unnecessary matters that are routinely handled by lay people without a lawyer. Your know that.  You know that, Mr. Williams.

MR. WILLIAMS:  Do I know that cases are routinely handled by lay people without a lawyer?  Yes, Your Honor.

THE COURT:  And that they resolve these cases, such as the one you're in, without sending letters to the clerk, to the state's attorney, filing pleadings, motions for mandamus, motions

for disclosure and production that are absolutely unnecessary.  Do you realize you're doing that?

MR. WILLIAMS:  Do I realize other people handle cases differently?  Yes, Your Honor.

THE COURT:  That's not responsive, Mr. Williams.

MR. WILLIAMS:  Am I - am I being interrogated, Your Honor?  Last session, you put me under oath, if I remember right, against my - against - over my objections and proceeded to ask questions under oath in a - in a criminal matter without the presence of counsel.  I mean, is this a continuation of that, Your Honor?

THE COURT:  No, Mr. Williams, it's not.  I have heard enough.  Is there anything you wish to say before I enter a decision in this matter?

MR. WILLIAMS:  No, Your Honor.

THE COURT:  We'll be adjourned.

On the day of the hearing respondent filed a memorandum objecting to the procedure and setting forth defenses to the charges of misconduct.  He argued that the procedure should have been commenced by a complaint because the alleged misconduct did not occur in the presence of Judge Foley.  With regard to the Rules of Professional Conduct cited in the order to show cause, he argued that Rules 1.1 and 4.4 did not apply because he was not representing a client, Rule 3.5(3) did not apply because it covers only disruptive conduct in court, and Rule 8.4(4) required clear

14

and convincing evidence of intentional misconduct resulting in actual prejudice to the administration of justice.  He then addressed the merits of the charges of misconduct as they had been explained by Judge Foley in response to the motion for a bill of particulars.  He stated that he wrote to the Deputy Chief Clerk not in her capacity as a clerk but as an opposing party in an adversarial proceeding and that he acted properly in advising her that it would be an ethical violation for the State's Attorney to represent her and she should therefore retain counsel.  He argued that his mandamus motion was authorized by Practice Book § 23-47, that he was entitled to seek discovery directly from the Clerk, and that he had no obligation to serve his motion for a bill of particulars on the Office of the State's Attorney as the disciplinary proceeding was "not a part of the underlying criminal case."  Finally, he denied threatening anyone.

On July 18, 2005, Judge Foley issued an unpublished decision. In essence, the Judge found that respondent had needlessly complicated what should have been a simple procedure to restore his driving privileges and, in doing so, had used means that unduly burdened others, disrupted the court and impeded the efficient administration of justice.  The Judge stated that once the speeding case was reopened, respondent's driving privileges could have been restored simply by notifying DMV.  The Judge found that respondent's mandamus motion was "wholly unnecessary to

15

restoration of his driving privileges" and that the means he used while pressing the motion, especially his letter to the Chief Deputy Clerk, were "abusive of both process and procedure."

The Court stated:

The respondent, through his letters and pleadings has created a situation for himself wholly disproportionate to the underlying speeding infraction.  Each of the pleadings in the file, which are a matter of record, and the letters which have been marked as court exhibits, obfuscate, inflame and attenuate a simple legal proceeding.  This court is extremely concerned that Mr. Williams' ability to parlay a simple motor vehicle hearing into a monumental, unnecessary, time-consuming, labor-intensive and ineffectual attack on the Deputy Clerk of the Court, the Central Infraction Bureau and the Commissioner of Motor Vehicles constitutes a danger to the administration of justice and to the citizens of Connecticut who might unwittingly engage his ponderous services.

Mr Williams testified at the direction of the court on June 10, 2005.  The court denied the motion for mandamus since it was not a proper motion nor in accordance with the Practice Book.  Neither § 23-46 nor § 23-47 permits mandamus on a simple motion.  It must be brought by writ, summons and complaint or by an order to show cause in an existing case. The court finds by clear and convincing evidence that the respondent's use of this motion and the supporting letters to the Deputy Chief Clerk of Court and to the Assistant State's Attorney were abusive of both process and procedure. Pursuing the improperly filed motion after the court had granted the motion to reopen and the motion to waive the fee was an entirely unnecessary, vexing and burdensome procedure. The court is satisfied that even as of this date, the respondent does not understand the proper procedure familiar even to lay litigants to obtain a restoration of their driving privileges.  Neither does he appreciate the distress to others and the burdens his conduct creates to the efficient administration of justice.

The respondent under questioning by the court indicated that he was unsure of the date he was admitted to the bar but believed it to be around 1989, 1990 or 1991.  He indicates he resides in Hong Kong, he has a house there, and he also lives

in Connecticut.  He indicates he has never represented a
client and does not do anything for a living.  Nonetheless,
he is authorized to practice law and the court finds that he
is, at present, not fit to practice before the courts of this
state in the capacity of a Commissioner of the Superior
Court.

ORDER

The court finds by clear and convincing evidence based upon
the pleadings, letters and conduct before the court that
[respondent] should be suspended from the practice of law in
order to safeguard the administration of justice and to
protect the public from the unfitness of this respondent.
This conduct of pursuing a meritless mandamus and
intimidating the Deputy Clerk with improper unsolicited
advice violates the Rules of Professional Conduct set forth
in Practice Book § 1.1, Competence, to wit failure to abide
by Practice Book Rules regarding pleadings; § 3.5(3) engaging
in conduct intended to disrupt the tribunal; Practice Book §
4.4 Respect for the rights of third persons; and § 8.4
engaging in conducted prejudicial to the administration of
justice.

Since the respondent does not presently engage in the
active practice of law, a suspension will not disrupt
any clients nor impose a financial hardship upon him.
It will provide an opportunity for the respondent to
familiarize himself the rules of Connecticut practice
and procedure if he wishes to practice as an attorney
before the courts of this state.

Accordingly pursuant to [Conn. Gen. Stat.] § 51-84 and
the inherent power of the court to inquire into the
conduct of Commissioners of the Superior Court,
[respondent] is hereby suspended from the practice of
law for a period of six months.  As a condition of his
readmission he shall complete a Connecticut Bar
Association approved course of instruction on legal
ethics and Connecticut Practice and Procedure.  The
conditions for readmission will be monitored by the
statewide bar counsel.

II.  Prior Proceedings in this Court

On March 7, 2006, counsel for the Grievance Committee

instituted a presentment petitioning this Court to impose

17

reciprocal discipline pursuant to Local Rule 83.2(f).  The next day, an order issued directing respondent to show cause why discipline should not be imposed.  Respondent moved to stay all further proceedings on the presentment until thirty days after the disposition of his appeal of the Superior Court's suspension order.  *See* Resp't Mot. For Extension of Time at 5 (ECF No. 5). In support of his request, respondent pointed out that he was not actively practicing in this Court and thus there was no risk of potential injury to clients.  *Id.* at 2.  At respondent's request, and with the agreement of counsel for the Grievance Committee, proceedings in this Court were stayed pending the outcome of the appeal in the underlying state case.  The Court ordered that when the appeal was decided, respondent would have thirty days to notify counsel for the Grievance Committee.

Respondent's appeal of the suspension order to the Connecticut Appellate Court led to protracted proceedings spanning several years.  Ultimately, the appeal was dismissed on procedural grounds, the Connecticut Supreme Court denied certification to appeal, and the United States Supreme Court declined to grant certiorari.  *See State v. Williams*, Docket No. A.C. 27416 (Conn. App. Oct. 6, 2009), *cert. denied*, 295 Conn. 917 (2010), *cert. denied*, 131 S. Ct. 1699 (2011).

Following the denial of certiorari, a new order to show cause was issued by this Court directing respondent to answer the

presentment by April 21, 2011, and setting a hearing for May 6, 2011.  Respondent objected that the order was premature and moved for an extension of time on the ground that the underlying state case was not yet final as he was considering filing a petition for rehearing in the U.S. Supreme Court.  *See* Resp't Mot. For Extension of Time at 6 (ECF No. 17).  Respondent added that it would be difficult for him to respond to the order to show cause within the allotted time in any event because he was actively engaged in reciprocal discipline proceedings in other jurisdictions stemming from his suspension in Connecticut.  *See id.* at 4-5.  Respondent's motion for an extension of time was granted in the absence of objection and he was given until June 8, 2011 to file an answer to the presentment.

Respondent then moved to quash the presentment on the basis that it failed to state an offense and thus the Court lacked subject matter jurisdiction.  *See* Resp't Mot. To Quash (ECF No. 19).  Counsel for the Grievance Committee did not respond to that motion but instead moved to continue the show cause hearing to give the parties time to discuss a possible agreement regarding reciprocal discipline.  *See* Grievance Comm.'s Mot. to Continue at 2 (ECF No. 22).  Counsel for the Committee pointed out that this would also give respondent time to provide notice of the termination of the underlying state proceeding, as required by the Court's order granting the stay.  *See id.*  The Court treated the

19

motion as a motion to vacate the show cause order, granted the motion, and ordered that the matter be held in abeyance pending discussions between counsel for the Committee and respondent.

Respondent moved to vacate the order granting the Committee's request for a continuance on the grounds that no negotiations were ongoing and the order unfairly relieved Committee counsel of the obligation to file a timely response to his motion to quash. *See* Resp't Mot. To Set Aside Order Granting Mot. To Continue (ECF No. 24). Soon after filing the motion to quash, respondent also moved to dismiss the action on the grounds that the presentment had not been authorized by the Grievance Committee and counsel for the Committee had not made an independent determination that the presentment was supported by probable cause. *See* Resp't Mot. To Dismiss the Presentment (ECF No. 25). Counsel for the Committee responded by filing a motion to lift the stay, which respondent opposed on the grounds that no new order to show cause could be issued until the Court ruled on his motions to quash and dismiss, which challenged the Court's jurisdiction. Counsel for the Committee did not reply, leading respondent to file a motion to dismiss for failure to prosecute (ECF No. 29). In response to that motion, the Court lifted the stay and scheduled a hearing for February 7, 2012. Respondent moved to extend the hearing date to give him at least thirty days to prepare and file a written response to the presentment. *See* Resp't Mot. To Continue Hearing

(ECF No. 33).  Respondent urged that a continuance was justified
in light of the burden of persuasion he would have to discharge in
responding to the Committee's petition for reciprocal discipline.
*Id.* at 2.  Respondent pointed out that this burden is a "heavy"
one because the "available grounds [for avoiding reciprocal
discipline] are narrow and the hurdle high."  *Id.*

The Court granted the motion to continue and postponed the
hearing until March 20, 2012.  The Court also issued a ruling
denying respondent's motions to dismiss the presentment and his
motion to quash.  *See* Rulings On Pending Motions (ECF No. 36).
Respondent then moved to dismiss the presentment for lack of
jurisdiction unless counsel for the Grievance Committee was
substituted as the real party in interest.  *See* Resp't Mot. To
Dismiss for Failure to Prosecute in the Name of A Real Party in
Interest (ECF No. 37).  That motion was denied and the hearing
was rescheduled for April 3, 2012.

Respondent then moved to postpone the hearing until after the
Clerk responded to certain requests for information regarding the
Grievance Committee.  *See* Resp't Mot. To Continue Hearing at 1
(ECF No. 41).  Respondent stated that he had asked the Clerk to
produce the following: "all expense claim forms submitted by the
Committee, its members and its counsel in relation to this
matter," "copies of the Committee's annual reports for the
previous three years," "an accounting of the attorney admission

21

fees collected pursuant to [Local Rule] 83.1," and "the internal procedures governing the appointment of Committee members and the Committee's counsel." *Id.* Respondent claimed that he needed this information because he was concerned about "judicial bias" and "systemic bias." *See id.* at 2, 6. Respondent explained that the Grievance Committee appeared to be a "political" body, *id.* at 3, whose members "have actually been appointed based upon their representation of various powerful legal entities." *Id.* at 4. Respondent stated that some of these entities are "directly averse to [him]," *id.* at 5, in particular, the Connecticut Judicial Review Council, the Connecticut Attorney General's Office, and the Connecticut Judicial Branch. *Id.* The Court denied the motion for a continuance on the ground that the materials respondent had requested from the Clerk were irrelevant to the issue whether reciprocal discipline should be imposed.

On April 2, 2012, respondent filed an answer to the presentment. The answer together with its attachments exceeded 300 pages in length. At the hearing the next day, the Court decided to continue the matter until May 11, 2012, in part to give counsel for the Committee time to prepare a written response to the defendant's submission. On April 17, counsel for the Committee filed a brief memorandum (ECF No. 46). On May 1, counsel for the Committee filed a correction (ECF No. 51). On May 9, respondent filed a lengthy reply (ECF No. 55). A hearing was

held on May 18, 2012.  The matter is now ripe for decision.

III.  Other Reciprocal Discipline Proceedings

While this case has been pending, respondent has been the subject of reciprocal discipline proceedings in New York and the District of Columbia resulting from his suspension in Connecticut. In both proceedings respondent sought to establish the same exceptions to the imposition of reciprocal discipline he relies on here.  In 2006, the Appellate Division of the New York Supreme Court suspended respondent from the practice of law for a period of six months, nunc pro tunc to July 18, 2005, until such time as respondent applies for reinstatement and is readmitted to practice by the court.  *See In re Williams*, 33 A.D.3d 38, 819 N.Y.S.2d 508 (2006), *cert. denied*, 553 U.S. 1018 (2008).  In 2010, the District of Columbia Court of Appeals suspended respondent from the practice of law for six months, nunc pro tunc to March 15, 2007. The court conditioned his reinstatement on successful completion of an approved legal ethics course.  *In re Williams*, 3 A.3d 1179 (D.C. 2010), *cert. denied*, 132 S. Ct. 1010 (2012).  Respondent remains suspended in both of those jurisdictions, as well as in Connecticut.

IV.  Discussion

On the face of the record underlying the disciplinary action of the Connecticut Superior Court, it does not clearly appear that any of the exceptions to reciprocal discipline set forth in Local

Rule 83.2(f)(2) applies in this instance.

                    A.

     Respondent first contends that the state court proceeding
violated his right to due process in numerous respects.  His
claims are unavailing for the reasons set forth below.

     It does not clearly appear that the Connecticut Superior
Court proceeding was so lacking in notice and an opportunity to be
heard as to violate due process.  An order to show cause was
issued.  The order notified respondent of the rules he was alleged
to have violated in the course of representing himself in the
speeding case.  The order also gave notice of the potential
sanctions that could be imposed, in particular, suspension pending
completion of approved courses on ethics and state practice and
procedure.  At the hearing on June 10, 2005, the Court responded
to respondent's request for a bill of particulars by explaining
the basis for the order to show cause, then postponed the hearing.
As a result, respondent had sufficient notice to enable him to
prepare a defense.  *See Thalheim v. Town of Greenwich*, 256 Conn.
628, 632-35 (2001) (trial court's order directing attorney to
"show cause why [he] should not be sanctioned under [§] 51-84 for
filing an amicus curiae brief without following the [r]ules of
[p]ractice" provided adequate notice even though it "did not
specify which rules were alleged to have been violated").  The
record also shows that he was given an adequate opportunity to

                          24

respond to the charges, both orally and in writing.

Respondent argues that the prior proceeding violated other due process rights in addition to the right to adequate notice and an opportunity to be heard. It is not clear that Local Rule 83.2(f)(2)(a) authorizes the court to decline to impose reciprocal discipline based on the other procedural violations alleged by respondent. However, the record of the prior proceeding has been reviewed to determine whether a violation occurred. It is not clear that there was a violation for the following reasons.

Respondent argues that due process required Judge Foley to initiate formal disciplinary proceedings rather than proceed summarily by means of an order to show cause. The Connecticut Supreme Court has recognized the authority of a trial judge to initiate disciplinary proceedings in the manner used in this instance. *See Burton v. Mottolese*, 267 Conn. 1, 29 (2003)("[As Connecticut's] rules of practice impliedly contemplate the trial court's inherent authority to discipline an attorney who commits misconduct in its presence. . . . we reject the plaintiff's claim that the exclusive method of disciplining attorneys is by filing a formal written complaint with the grievance committee."). Even assuming the conduct at issue did not occur in the presence of the court, as contemplated by *Mottolese* and Practice Book § 2-45, respondent has not demonstrated that the procedure violated due process. The court postponed the hearing more than once to enable

25

respondent to obtain counsel, effectively granted respondent's request for a bill of particulars, then gave respondent another month to prepare.

Respondent argues that Judge Foley was required to recuse himself from acting as the judge in the disciplinary proceeding due to a conflict of interest arising from his position as the administrative judge with responsibility for the proper operation of the Clerk's Office.  Respondent urges that Judge Foley's issuance of the order to show cause served to derail the hearing on the mandamus motion, which implicated Judge Foley's administration of the Clerk's Office.  Respondent further argues that Judge Foley was "personally embroiled" with him, as shown by the transcripts of the hearings, requiring the Judge to recuse on this basis.  In retrospect, it may have been preferable if Judge Foley had asked another judge to deal with the matter.  But it is not clear that he was required to do so as a matter of due process.[5]

Respondent next argues that he was denied the right to confront witnesses.  Respondent contends that his attempt to subpoena Ms. Pickett, Ms. Barry and Judge Foley to testify at the hearing on July 18, 2005, was improperly denied.  The record

---

[5]  In a related vein, respondent argues that he was denied due process in the prior proceeding because of systemic bias at all levels of the state judiciary.  However, it is not clear on the record of the prior proceeding that any due process violation occurred.

establishes that Judge Foley gave respondent an opportunity to make an offer of proof concerning the anticipated testimony of Ms. Pickett and Ms. Barry, both of whom were present, and respondent did not do so.  Respondent has not shown that he had a right to call Judge Foley as a witness.

Respondent also states that he was denied the right to counsel.  A lawyer in a disciplinary proceeding in Connecticut is entitled to appear with counsel, but a right to appointment of counsel has not been recognized.  *See Statewide Grievance Committee v. Friedland*, 222 Conn. 131, 145 (Conn. 1992)("Because we discern no special circumstances in this case that would warrant departure from the general rule that civil proceedings ordinarily do not give rise to a right to counsel, we decline to address the merits of the defendant's claim.").  Judge Foley urged respondent to retain counsel and gave him ample time to do so.  Respondent's inability to obtain counsel did not prevent the Court from proceeding.

Respondent next states that he was compelled to be a witness in his own criminal trial.  It is true that the disciplinary proceeding was conducted under the same docket number as the speeding case.  But the disciplinary proceeding was distinct from the underlying speeding case, as respondent himself recognized at the time, and respondent was not asked to testify concerning matters that could lead to a criminal prosecution.  Thus, it is

not clear that his Fifth Amendment privilege against self-incrimination was violated.  *See United States v. Jennings*, 652 F.3d 290, 303 (2d Cir. 2011).

Finally, respondent argues that his right to due process was violated because he was denied appellate review.  Respondent's appeal was dismissed by the Connecticut Appellate Court after he missed a final deadline for filing his brief and the Connecticut Supreme Court declined to review the case.  Respondent argues that the dismissal of his appeal was unfair, unauthorized and contrary to custom and practice but he has not demonstrated that enforcement of the final deadline violated due process. Respondent argues that the Supreme Court's decision is tainted due to the failure of two justices to recuse themselves after he filed complaints against them.  It is not clear, however, that recusal was required.  *See Brown v. Brown*, FA074028466, 2011 WL 1888201 (Conn. Super. Apr. 28, 2011)(a judge is not automatically disqualified solely because a litigant has filed a complaint against the judge with disciplinary counsel or a similar body).

B.

Respondent contends that there is an infirmity of proof to establish that he engaged in misconduct as determined by the state court.  It does not clearly appear on the face of the record in the prior proceeding that there is an infirmity of proof justifying an exception to reciprocal discipline.

28

Respondent argues that Rules 1.1 and 4.4 do not apply to his conduct because they apply only when a lawyer is representing another.  Connecticut courts have recognized that a rule of professional conduct does not apply to a lawyer representing himself if in light of the express terms of the rule and the commentary it is apparent that the rule applies only when the lawyer is representing someone else.  *See Somers v. Statewide Grievance Comm.*, 245 Conn. 277, 287 (Conn. 1998); *Pinsky v. Statewide Grievance Comm.*, 216 Conn. 228, 236 (Conn. 1990).  I agree with respondent that Rule 1.1 appears to contain this limitation.

It is not clear, however, that Rule 4.4 is so limited.  Rule 4.4, although explicitly concerned with a lawyer's conduct "[i]n representing a client," appears in a section of the Rules concerned with "transactions with persons other than clients," and has frequently been held to apply to lawyers proceeding *pro se*. *See* Ellen J. Bennett et al., *Annotated Model Rules of Professional Conduct* 430 (7th ed. 2011)(collecting cases).  *See also* Margaret Raymond, *Professional Responsibility for the Pro Se Attorney*, 1 St. Mary's J. Legal Mal. & Ethics 2 (2011).  I conclude that this Rule applied to respondent's conduct while he represented himself in state court.  Moreover, respondent has not clearly demonstrated that his conduct did not violate this rule.  Applying the deferential standard of review required in cases of reciprocal

discipline, the state court's finding that respondent's conduct following the reopening of the speeding case involved use of means that had no substantial purpose other than to embarrass and burden others is adequately supported.

It is also not clear that respondent did not violate the other rules at issue.  In concluding that respondent's conduct violated Rule 3.5(3), the state court found that respondent's written submissions served to "obfuscate, inflame and attenuate a simple legal proceeding."  Respondent argues with some force that his pleadings were permitted by the Practice Book.[6]  But in finding a violation, the Court also referred to respondent's letter to Ms. Pickett, which it found to be "intimidating."  The Court's determination that respondent's letter to the Deputy Chief Clerk was intended to disrupt the tribunal, when accorded the degree of deference required by the law of reciprocal discipline, is also adequately supported.  *See Lawyers' Manual on Professional Conduct (ABA/BNA)* No. 349, 61:909 (2011) ("The prohibition in Model Rule 3.5(d) against conduct intended to disrupt a tribunal extends to threats or other attempts to intimidate judges, opposing counsel, witnesses, or court personnel." (citing *People v. Brennan*, 240 P.3d 887 (Colo. O.P.D.J. 2009); *In re Williams*, 414 N.W.2d 394 (Minn. 1987); *In re Vincenti*, 704 A.2d 927, 940

---

[6]  Respondent emphasizes that his motions to reopen and to waive the reopening fee were granted, and his mandamus motion was set for an evidentiary hearing at the request of the State.

(N.J. 1998))).

Turning to Rule 8.4(4), respondent argues that the rule is unconstitutionally vague.  This rule overlaps with Rule 3.5(3) and is therefore redundant in this instance.  *See* 2 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 65.6 (3d ed. 2000). Because it is not clear that there is an infirmity of proof to establish the violation of Rule 3.5(3), it is not necessary to consider respondent's void for vagueness challenge to Rule 8.4(4).[7]  In any event, it is not clear that respondent lacked fair notice that his conduct following the reopening of the speeding case could be deemed to run afoul of this rule, especially the letter to Ms. Pickett, which he unsuccessfully moved to suppress.  On its face, the letter is inconsistent with established norms of the profession.

V.   Conclusion

For the foregoing reasons, respondent has failed to sustain his burden of demonstrating that reciprocal discipline should not be imposed.  The Court therefore imposes reciprocal discipline as required by Local Rule 83.2(f)(2).  Respondent is suspended from practice in this Court for a period of six months.  This six-month period is deemed to have commenced April 3, 2012, when respondent

---

[7]  Similar challenges have been rejected.  *See Villeneuve v. Connecticut*, No. 3:10cv296, 2010 WL 4976001, at *6 (D. Conn. Dec. 2, 2010); *Melnick v. Statewide Grievance Comm.*, No. 31 95 11, 1995 WL 387579, at *4 (Conn. Super. Ct. June 26, 1995).

31

appeared for a hearing on the order to show cause issued by this Court.  Respondent may be reinstated to practice in this Court when he satisfies the requirements for readmission to practice in Connecticut.

So ordered this 4th day of December 2012.

/s/  RNC
Robert N. Chatigny
United States District Judge
